## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| THEODORE J. ZALLER, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:19-cv-02415 |
| FRED'S, INC., MICHAEL K. BLOOM, WALGREENS BOOTS ALLIANCE, INC., and STEFANO PESSINA, | § § § § § § | |
| Defendants. | § | |

## MICHAEL BLOOM'S REPLY MEMORANDUM
## IN SUPPORT OF HIS MOTION TO DISMISS

**MICHAEL BLOOM'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**INTRODUCTION**

Business is inherently risky and sometimes, despite the parties' best efforts, a proposed transaction does not pan out. But that does not mean that a corporate officer's prior optimistic statements about the unrealized transaction are automatically transformed into fraud. This is precisely the leap of logic that Plaintiffs want this Court to make. Plaintiffs rely on impermissible fraud-by-hindsight, arguing that because the Divestiture Sale involving Fred's never went through, Defendant Michael Bloom ("Bloom") must have known from the beginning that it would fail. This is plainly insufficient under established law. Seizing on Bloom's optimistic, forward-looking statements about the potential benefit to Fred's should the transaction close, Plaintiffs conjure as much innuendo as possible to argue that Bloom's corporate cheerleading amounts to fraud. But in the end, Plaintiffs are stuck with a Complaint that cannot point to a legally cognizable false statement or omission made with any intent to defraud shareholders. Plaintiffs' claims should be dismissed because (1) Plaintiffs' fraud-by-hindsight allegations are insufficient to allege scienter; (2) all of Bloom's challenged statements are either opinion, puffery, or protected by the PSLRA's safe harbor; and (3) Plaintiffs have not demonstrated that any of the alleged omissions would alter the total mix of information already available to Fred's shareholders.

**I.    PLAINTIFFS HAVE NOT PLED A COMPELLING INFERENCE OF SCIENTER.**

**A.    Plaintiffs' Fraud-By-Hindsight Theory Is Insufficient As A Matter of Law.**

Plaintiffs fail to meet the "exacting" and purposefully elevated standard implemented by Congress for pleading scienter. *See La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010); *contra* Opp. at 19 (erroneously stating that the burden of scienter is only "modestly elevated"). Plaintiffs did not, and cannot, meet their exacting burden to support a "strong inference" that Bloom acted with actual knowledge as to the falsity of his statements. Instead, the only cogent inference to be drawn from the allegations is entirely innocent: that Bloom

expressed optimism regarding a proposed transaction that he and the company repeatedly disclosed was subject to FTC approval.

The theory of scienter that Plaintiffs raise in their Opposition is textbook "fraud-by-hindsight" that has been repeatedly rejected by courts in this Circuit, claiming that because the Divestiture Sale was ultimately not consummated, Bloom must have known all along that the Divestiture Sale would not go through. *See e.g.* Am. Compl. ¶ 8. But in attempting to advance this theory, Plaintiffs ignore abundant allegations in their own Complaint supporting the inference that Bloom believed a viable deal could still be reached with the FTC on the Divestiture Sale. This includes that (1) Fred's, Rite Aid, and Walgreens continued to work with the FTC on the Divestiture Sale for *three months* following the March 2017 meeting, (2) the APA required Walgreens and Rite Aid to provide assistance and resources to Fred's to remedy any perceived systems and infrastructure issues, and (3) the FTC never issued an opinion on the Divestiture Sale. *Id.* ¶¶ 9, 101-02, 106, 107. Taken as a whole, Plaintiffs' allegations of scienter do not indicate that Bloom sought to mislead the public about a transaction he knew could not garner FTC approval, but instead demonstrate that Bloom and Fred's (along with the other Defendants) were continuing to try to obtain approval for the Divestiture Sale, which the FTC was still evaluating through June 2017. *Id.* ¶¶ 101-02, 106-07; *La. Sch. Empls*, 622 F.3d at 479 ("A complaint will survive a motion to dismiss only if 'a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged.'") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

Plaintiffs' fraud-by-hindsight theory, outlined in a chart in their Opposition at pages 11-13, boils down to just three primary points: (1) purported knowledge of FTC criteria, (2) alleged infrastructure and systems deficiencies, and (3) purported negative feedback at a March 2017

meeting with the FTC.  Opp. at 11-13.  But, for the reasons described below, each of these arguments is insufficient to plead scienter.

*Knowledge of FTC Criteria*.  Plaintiffs' Opposition makes the vague and sweeping conclusion that "Bloom had actual knowledge of the FTC criteria which Fred's did not meet." *See* Opp. at 20.  Plaintiffs equate  Bloom discussing antitrust concerns related to the Walgreens merger with the FTC *before* signing the APA with Bloom having actual knowledge that Fred's could never meet the FTC's criteria for a divestiture buyer.  *See* Opp. at 20-21 (pointing to the demise of the APA seven months later as "evidence" of Bloom's scienter).  But Plaintiffs' Complaint concedes that the APA acknowledged that "the whole purpose of the Divestiture Sale was to address [antitrust] concerns raised by FTC staff."  Opp. at 20-21 (citing Am. Compl. ¶ 63).  There are no allegations in the Complaint that Bloom believed any FTC antitrust concerns were insurmountable until June 2017, when Fred's announced the termination of the APA.  Am. Compl. ¶ 106.  Rather, the Complaint is replete with examples of the parties working with the FTC for months to attempt to resolve antitrust issues.  Am. Compl. ¶¶ 102-03, 105-06.  The more compelling inference here is that Fred's entered into the APA after speaking with the FTC about its concerns because Bloom believed Fred's was capable of satisfying the FTC's criteria and completing the Divestiture Sale. *Id.*; *see also Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 946 (6th Cir. 2009) (plaintiffs did not plead scienter where they only alleged defendants' knowledge of a legal standard, but did not plead sufficient factual allegations showing that defendant also knew the company did not comply with the legal standard).

Plaintiffs rely on *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1224 (D. Kan. 2002) to argue that Bloom need not have known that the transaction would ultimately be blocked to allege scienter.  Opp. at 25.  But Plaintiffs' allegations are a far cry from the reckless omissions alleged

<u>**MICHAEL BLOOM'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**</u>          **3**

in *Sprint*.  In *Sprint*, the court noted specifically that one of the regulatory bodies overseeing the proposed merger had actually ceased its investigation into the transaction—a definitive determination that defendants did not disclose.  *Id.* at 1226.  In contrast here, the Complaint is clear that Bloom and Fred's continued to work with Walgreens and Rite Aid in an effort to garner FTC approval through June 2017.  Am. Compl. ¶¶ 102-03, 105-06.  In light of the ongoing nature of these negotiations, unlike in *Sprint*, there was no definitive termination for Bloom to disclose.

**Alleged Systems Deficiencies**.  Plaintiffs also attempt to argue that alleged deficiencies in Fred's IT and warehouse infrastructure somehow demonstrate Bloom's scienter.  But nothing in the Complaint suggests that Bloom knowingly misrepresented the strength of Fred's infrastructure with the intent to mislead investors.  Instead, Plaintiffs' Opposition tellingly omits allegations in the Complaint demonstrating the opposite—namely that the APA, a document readily available to Fred's shareholders,[1] specifically required Walgreens and Rite Aid to provide significant assistance and resources to Fred's after the Divestiture Sale to ensure that Fred's could handle the acquisition of the divestiture stores.  Am. Compl. ¶¶ 60, 63-64.  In light of this infrastructure support for Fred's, Plaintiffs' argument that alleged infrastructure concerns is indicative of scienter is simply incorrect. *See* Opp. at 21.  The far more compelling and correct inference from the facts alleged is that Bloom negotiated for Walgreens and Rite Aid's support to address any outstanding concerns from the FTC.  *See Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1017 (S.D. Ohio 2004) ("[M]isguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of alleging fraud by hindsight.").

**The March 14, 2017 Meeting**.  Plaintiffs also attempt to compensate for the Complaint's

---

[1] The Asset Purchase Agreement was appended as Exhibit 2.1 to Fred's April 13, 2017 Form 10-K, which was filed publically with the SEC.

MICHAEL BLOOM'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS          **4**

lack of particularized factual allegations by claiming that purported negative feedback at the March 14, 2017 meeting with the FTC must have meant that Bloom knew the Divestiture Sale was inescapably doomed.[2]  Opp. at 11, 15, 18, 20, 21, 24.  Setting aside the unreliable and speculative nature of the confidential witness statement on which this theory is based, Plaintiffs make no effort to refute the arguments raised in Bloom's Motion to Dismiss, much less the allegations in Plaintiffs' own Complaint that the parties continued to work on the Divestiture Sale *for another three months* following the March 2017 meeting.  Am. Compl. ¶¶ 101-02, 106, 107.  Plaintiffs similarly overlook that Fred's certified substantial compliance with the FTC's Second Request for Information in May of 2017, several months after allegedly receiving FTC feedback.  *Id*.  Taken together, the far more compelling inference is that the FTC had not made a final determination of whether to approve the Divestiture Sale in March 2017, and as a result, the parties continued to work towards approval.

Plaintiffs rely on *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 48 (2011), to claim that "an uncertain outcome does not undermine a strong inference that defendants acted with scienter."  Opp. at 24.  But *Matrixx* is easily distinguished.  In *Matrixx,* the Supreme Court found that plaintiffs had adequately alleged scienter by pleading facts that demonstrated defendants had withheld reports indicating possible side effects of a cold remedy.  *Id.* at 49.  The Court rejected defendants' arguments that the reports of adverse side effects were too few to be concerning, because Plaintiffs had pled specific factual allegations demonstrating that defendants took action in response to the reports, including allegations that defendants had hired a consultant to review the product and conducted internal studies regarding the reported side effects.  *Id.*

---

[2] Plaintiffs' own arguments in the Opposition highlight the tenuous nature of their allegations regarding scienter because Plaintiffs contradict themselves, sometimes claiming that Bloom was told at the March 2017 meeting that the FTC was *unlikely* to recommend approval, while other times claiming that the FTC would *definitively not* approve the transaction.  *Compare* Opp. at 11, *with* Opp. at 20.

**MICHAEL BLOOM'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**          **5**

The "concealed reports" in *Matrixx* are a far cry from what is alleged here. Plaintiffs in this case have failed to plead any similar, specific allegations negating the inference that the FTC was still considering whether to grant approval as of the March 17, 2017 meeting. Instead, Plaintiffs' allegations demonstrate that Bloom and Fred's continued to work toward FTC approval for the transaction after the March 2017 meeting—something they were unlikely to do if they believed that the Divestiture Sale was terminated. *See* Am. Compl. ¶¶ 101-02, 106, 107.

Finally, Plaintiffs seek to bolster their theory of scienter in the Opposition by claiming that Bloom was "aware that Fred's was excluded from FTC discussions following this March 14, 2017 FTC meeting." Opp. at 21. However, *no such allegations appear in the Amended Complaint.* An opposition brief cannot raise new allegations that are not contained in the complaint to survive a motion to dismiss. *See Joslin v. Metro Nashville/Davidson County*, No. 3:12–cv–1284, 2013 WL 2250712, at *3 (M.D. Tenn. May 21, 2013) ("Of course, Rule 12(b)(6) motions test the sufficiency of the allegations contained in a pleading, *without reference to any supplementation of those allegations in a party's briefing* in response to a Rule 12 motion.") (emphasis added).

When viewing Plaintiffs' allegations holistically, Plaintiffs are left with nothing more than an improper fraud-by-hindsight theory—a fact which Plaintiffs seem to concede in their Amended Complaint. ¶ 85 (acknowledging that Plaintiff's allegations regarding negative feedback at the March 2017 meeting are based in part on "the fact that the FTC Bureau of Competition ultimately did not recommend approval, and that the FTC ultimately did not approve divestiture to Fred's."). Courts in this Circuit have made clear that such allegations are insufficient to prove scienter. *La. Sch. Emps.*, 622 F.3d at 484 ("Finding scienter based on such allegations would be equivalent to 'the classic fraud by hindsight case where a plaintiff alleges that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly.'") (citation omitted); *Albert*

*Fadem Tr.*, 334 F. Supp. 2d at 1017 (same and collecting cases).

        **B.**        **Plaintiffs Have Failed To Plead Scienter Using The *Helwig* Factors.**

As for the Sixth Circuit's nine-factor *Helwig* test for analyzing allegations of scienter, Plaintiffs make no attempt at all to address factors 1, 4, 5, 7, 8 or 9, conceding that the Complaint is deficient in these areas. *See Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001). Plaintiffs fare no better in their attempts to satisfy the remaining factors. Plaintiffs claim to have satisfied *Helwig*'s second factor because "Bloom admitted in an internal report" the allegedly omitted information. *See* Opp. at 22. But a confidential witness's "observation" at a meeting does not constitute the type of "report" contemplated by the Sixth Circuit in *Helwig*'s second factor. *See* Am. Compl. ¶ 81; *In re EveryWare Glob., Inc. Sec. Litig.,* 175 F. Supp. 3d 837, 860 (S.D. Ohio 2016) (holding that an internal "report" that was nothing more "than an employee's disagreement with management" and not "internal reports, memoranda or the like" that would satisfy *Helwig's* second factor) (citation omitted).

Likewise, Plaintiffs claim to have satisfied *Helwig's* third factor, which looks at the temporal proximity between allegedly misleading statements and the disclosure of contradictory information, because third-party news sources reported additional information about the Divestiture Sale following Bloom's statements. Opp. at 22. But Plaintiffs cannot satisfy *Helwig's* third factor by relying on allegations that third-parties—not Bloom himself—reported the additional information. *See, e.g.*, *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 981 (6th Cir. 2018) (third factor satisfied when alleged misrepresentation and later disclosure were both made by company); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 684 (6th Cir. 2005) (same). This is because when a later disclosure comes from a source other than the defendant, the allegations do not give rise to the same strong inference that the ***defendant*** himself was knowledgeable of the facts which made the statement misleading. *See In re Omnicare, Inc.*

*Sec. Litig.*, 769 F.3d 455, 484 (6th Cir. 2014) (explaining that temporal proximity is relevant to scienter "because this short turnaround made it less likely that the corporation did not know that its statement was misleading.").  And in any event, the temporal proximity between the only statements Plaintiffs identify that could plausibly fall under this factor (Bloom's June 6 statement expressing optimism about the transaction and the June 29 announcement that the Divestiture Sale would not be consummated) is insufficient by itself to plead a compelling inference of scienter. *See Dougherty*, 905 F.3d at 981 (six week gap between disclosures weighed only "minimally" in favor of third *Helwig* factor); *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 973 (S.D. Ohio 2009) ("[S]everal cases suggest that the temporal proximity between an alleged fraudulent statement and a later disclosure, without more, is nothing more than fraud by hindsight.") (citing *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 576-77 (6th Cir. 2008)).

Finally, as explained in Section I.A., *supra*, Plaintiffs cannot rely on a theory of fraud-by-hindsight to impute knowledge of the Divestiture Sale's eventual termination to Bloom.  Therefore, Plaintiffs have failed to demonstrate disregard for the most current factual information under *Helwig's* sixth factor.  Plaintiffs cannot overcome this deficiency by relying on a confidential witness's "observations" and musings about a meeting at an undisclosed time prior to an earnings call. Am. Compl. ¶ 87.  Under *Omnicare*, since the confidential witness's statement involves opinions and predictions related to the probability of the Divestiture Sale's success (called "soft" information), Plaintiffs were required to, for each statement alleged to be materially misleading, explain how it was said with knowledge of its falsity.  *See Omnicare Sec. Litig.*, 769 F.3d at 470. Plaintiffs' bald conclusions, which do not account for the evolving nature of the ongoing negotiations with Walgreens, Rite Aid and the FTC, do not meet this standard.

Because Plaintiffs have failed to plead any allegations whatsoever supporting the majority

of the *Helwig* factors and only limited, insubstantial allegations as to the rest, Plaintiffs have not pled a cogent and compelling inference of scienter under the Sixth Circuit standard. *See Local 295/Local 851 IBT Employer Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp.,* 731 F. Supp. 2d 689, 718 (S.D. Ohio 2010) ("The complete absence of six of the nine *Helwig* factors, particularly the lack insider trading, suggests that the complaint faces an uphill climb to establish that any of the Defendants acted with scienter.").

## II.   PLAINTIFFS ALLEGE NO ACTIONABLE, MATERIAL MISSTATEMENTS OR OMISSIONS.

### A.   Statements of Opinion and Puffery Are Not Actionable.

Plaintiffs concede in their Opposition that mere opinion or puffery cannot support a claim under Section 10(b) as a matter of law. *See* Opp. at 13-15; *see Omnicare, Inc.*, 583 F.3d at 943. Yet, Plaintiffs do not demonstrate how Bloom's statements that Fred's had "confidence in the transaction," that Fred's "remain[ed] optimistic" in its ability to obtain FTC approval, or that the Divestiture Sale would be a "transformative event," are anything other than the kind of "rosy affirmations" that cannot serve the basis of a securities fraud claim. *See* Am. Compl. ¶¶ 78, 94, 98; *Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 243 (6th Cir. 2015) (holding that statement that company had increased its "competitiveness" and implemented a range of growth strategies was puffery).

Plaintiffs try to argue that Bloom's optimistic statements are not puffery as they concerned the Divestiture Sale, which promised a "specific" benefit to Fred's by greatly expanding its footprint within a specific time period. Opp. at 11. But courts routinely find that affirmations about a specific corporate event are non-actionable puffery. *In re Fed.-Mogul Corp. Sec. Litig.*, 166 F. Supp. 2d 559, 562 (E.D. Mich. 2001) (dismissing as puffery statements that company was "proceeding with its plans of acquiring complementary companies and extracting synergies, that

such strategy continues as planned, and that such plans remain on track or on target."); *See, e.g.*

*Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 489 (S.D.N.Y. 2018) (statements about

specific set of data were puffery when adorned with optimistic language).

Further, Bloom's generally optimistic statements about how many additional stores could

be added to Fred's footprint were the Divestiture Sale to be completed are not akin to the "objective

data" about specific products contemplated in the cases Plaintiffs cite.  For example, in *City of*

*Monroe*, the court found that all but one of the allegedly misleading statements about the strength

of a company's tires were "immaterial puffery."  399 F.3d at 670-71 (statements such as the

company "had 'full confidence' in its tires" and that "'aggressive product development' had 're-

established the Firestone name as a vigorous brand in premium-grade tires'" could not give rise to

Section 10(b) liability).  The only actionable statement in *City of Monroe*—made after a series of

lawsuits involving the safety of the tires—was a statement that the company "continually

monitor[s] the performance of all our tire lines, and the objective data clearly reinforces our belief

that these are high-quality, safe tires."  *Id.* at 671.  *City of Monroe* is thus inapplicable here, because

Bloom's statements generally described the optimistic outlook of a possible future transaction, and

were not based on "objective" data supporting his conclusion or made as a direct response to

negative corporate events.

Plaintiffs' reliance on *Nguyen v. New Link Genetics Corp.* is also misplaced.  Opp. at 14.

The *Nguyen* court found that the statements at issue *were* inactionable statements of puffery

because "companies must be permitted to operate with a hopeful outlook: People in charge of an

enterprise are not required to take a gloomy, fearful or defeatist view of the future."  297 F. Supp.

at 488-89 (statements that company was "confident" in a study's design and "encouraged" by its

progress are "the type of expressions of puffery and corporate optimism that do not generally give

<u>MICHAEL BLOOM'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS</u>       **10**

rise to securities violations."). All of the cases Plaintiffs cite suffer from the same infirmities.[3] Without statements providing concrete facts, as are lacking here, dismissal is appropriate.

Plaintiffs' contention that Bloom's opinions fall within the *Omnicare* exception is wrong. Opp. at 14; *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. at 175, 186 (2015) ("[A] sincere statement of pure opinion" is truthful "regardless whether an investor can ultimately prove the belief wrong."). First, Bloom's alleged statements that the Divestiture Sale could be "transformative," that Fred's had experience as a regional pharmacy, and that Fred's "remained committed" to the Divestiture Sale did not "conceal known material facts," as Plaintiffs claim. Opp. at 14-15. This is because Plaintiffs' own allegations demonstrate that Fred's remained committed to winning FTC approval for the Divestiture Sale, *which the FTC had not yet issued an opinion on,* as indicated by both Fred's and the FTC's conduct. Am. Compl. ¶¶ 101-02, 106, 107. Second, Bloom's opinions did not "embed" a "factual assertion that Fred's qualified under the FTC's criteria," as Plaintiffs contend. Opp. at 14-16. Instead, Fred's gave investors abundant warnings about the need for FTC approval that accompanied Bloom's opinions, such as "our ability to consummate the proposed acquisition of divested Rite Aid assets remains subject to a number of conditions, including among others . . . receipt of preliminary approval from the U.S Federal Trade Commission." April 13, 2017 10-K; *see also* Opp. at 15. Finally, Plaintiffs did not allege any facts indicating that Bloom did not believe his stated opinions and continued

---

[3] Plaintiffs' reliance on *In re Sepracor, Inc. Sec. Litig.* is misguided because the Massachusetts court focused primarily on whether the statements at issue fell under the PSLRA's safe harbor. 308 F. Supp. 2d 20, 32 (D. Mass. 2004). Further, the *Sepracor* statements, like those in *City of Monroe,* are distinguishable because they encompass objective data like product testing results and espoused concrete predictions as to exactly *when* the company would receive approval from the FDA and how much revenue they expected to garner when the product was approved. *Id.*

Similarly, in *In re Harman Int'l Indus., Inc. Sec. Litig.*, the statements at issue offered concrete predictions regarding sales totals. *See* 791 F.3d 90, 109 (D.C. Cir. 2015) (statement incorporating data about a specific product, claiming that "FY 2007 sales totals could double in the final quarter," for a specific product was not puffery). And in *Grae v. Corr. Corp. of Am.*, the statements at issue incorporated "concrete, explicit" client expectations as dictated by specific contracts. No. 3:16-CV-2267, 2017 WL 6442145, at *15 (M.D. Tenn. Dec. 18, 2017).

MICHAEL BLOOM'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS          11

optimism towards the Divestiture Sale.  Indeed, Plaintiffs' allegations reveal the opposite—Bloom

and Fred's continued to work towards receiving FTC approval for the transactions for nearly *three*

*months* after the March 2017 meeting.  Am. Compl. ¶¶ 101-02, 106, 107.

**B.      The Alleged Omissions Were in the Total Mix Of Information Available.**

Plaintiffs outline a series of allegedly omitted material that essentially boils down to just

three alleged omissions: (1) information regarding the FTC criteria, (2) alleged infrastructure and

systems deficiencies, and (3) purported negative feedback at a March 2017 meeting.  Opp. at 10-

12.  Plaintiffs first claim that Bloom should have disclosed additional information about the

challenges to Fred's ability to satisfy the FTC criteria.  *Id.*  But the Opposition ignores that Bloom's

statements and Fred's public filings *did* include extensive warnings that the transaction could not

be completed without FTC approval and that Fred's may not garner such approval, including:

- Closing of the transaction . . . ***is subject to approval by the Federal Trade Commission*** as well as customary regulatory approvals and closing conditions." Dec. 20, 2016 Press Release (emphasis added); *accord* Apr. 6, 2017 Press Release.

- "***The Company may not be able to complete the Transaction on the terms described above or other acceptable terms or at all because*** of . . . the following: . . . (ii) the failure to satisfy the closing conditions set forth in the Asset Purchase Agreement, including ***receiving the Federal Trade Commission's approval***." Jan 30, 2017 Press Release (emphasis added).

These disclosures are more than enough to put investors on notice of the need for FTC

approval.  *Albert Fadem Tr.*, 334 F. Supp. 2d at 1022 ("The cautionary language in the Registration

Statement sufficiently warns investors of the volatility and risky nature of the energy trading and

wholesale business, such that the Plaintiffs' alleged omissions are immaterial.").

Similarly, the Opposition inappropriately disregards[4] the numerous third-party sources

---

[4] Plaintiffs invoke in their Opposition the "fraud-on-the-market" theory to claim that Bloom's "materiality arguments fail."  Opp. at 15.  Plaintiffs misconstrue and misapply this theory. As an initial matter, the "fraud-on-the-market" theory addresses the reliance element of proving a Section 10(b) claim, not materiality. *See Zwick Partners, LP v. Quorum Health Corp.*, No. 3:16-CV-2475, 2018 WL 2933406, at *10 (M.D. Tenn. Apr. 19, 2018).  In other words, a Plaintiff may pursue a fraud-on-the-market theory to establish reliance on a misrepresentation or omission

---

Plaintiffs themselves identified in their pleadings that had already published potential problems with the Divestiture Sale as early as January 2017, which was also included in the total mix of information available to shareholders. *In re Yukos Oil Co. Sec. Litig.*, Civ 04–5243 WHP, 2006 WL 3026024, *21 (S.D.N.Y. Oct. 25, 2006) (non-disclosure was "immaterial" because newspapers had covered the alleged non-disclosure and there was a "wealth of publicly available information to that effect"); *see also* Am. Compl. ¶¶ 72, 82 (noting that in January 2017 Bloomberg reported that "FTC officials are concerned the sale doesn't go far enough to preserve competition that would be lost in the tie-up" and that on March 8, 2017 "Bloomberg confirmed that the FTC was concerned with Fred's financial and debt issues."); Bloom Br. (Dkt. 57), Exh. H, Joshua Fineman, Bloomberg, *RAD/WBA FTC Resolution Unlikely in Near-Term: Capitol Forum* (Mar. 8, 2017).

Finally, because Plaintiffs' claims rest primarily on an omission theory, Plaintiffs were required to plead more than a boilerplate "material omission" and instead identify the specific duty to disclose the information. *See* Bloom Br. (Dkt. 57), at 16-18. Plaintiffs claim that they have done so because once Bloom spoke to investors about the Divestiture Sale, "he cannot omit ***material*** facts related to that issue so as to make his disclosure misleading." Opp. at 18 (citations omitted) (emphasis added). But Plaintiffs make no attempt in their Opposition to explain how Bloom's statements were misleading in light of the abundance of information, warnings and disclosures that were already part of the "total mix" of information available to shareholders. *See Krystek v. Ruby Tuesday, Inc.,* No. 3:14-CV-01119, 2016 WL 1274447, at *7 (M.D. Tenn. Mar. 31, 2016) (a defendant "is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."). Accordingly, Plaintiffs have failed to demonstrate not only

---

sufficient to state a claim under Section 10(b). *Id.* Further, under the "fraud-on-the-market" the *plaintiff* has the burden of proving and pleading reliance. *Id.* Plaintiffs' "fraud-on-the-market" argument therefore has no bearing on the outcome of this motion to dismiss.

**MICHAEL BLOOM'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**          **13**

the materiality of the alleged omissions, but also that Bloom had any duty to disclose the allegedly omitted information in the first place.

### C. Bloom's Forward Looking Statements Fall Under The PSLRA Safe Harbor.

Plaintiffs next argue that Bloom's inherently forward-looking statements related to the success of the Divestiture Sale cannot fall within the PSLRA safe harbor because they contain statements of present fact or were not accompanied by sufficient cautionary language. Opp. at 16. Plaintiffs' arguments misconstrue and misapply this safe harbor provision.

First, Plaintiffs claim that Bloom's optimistic statements about the proposed transaction and the possible benefits should it be consummated contain statements of present fact (rather than forward looking statements) because they "involved" the APA, a document that had previously been negotiated and signed. Opp. at 16. But Plaintiffs cannot transform an inherently forward looking statement about the *possibility* of completing the Divestiture Sale into a "statement of present fact" by claiming it implies the occurrence of an earlier, prerequisite event. *See Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 268 (D. Mass. 2013) ("Considerations of mixed present/future statements do not take forward-looking projections outside the protection of the safe harbor merely because they also imply some present, unstated fact. . . . Plaintiff's interpretation would leave the safe harbor impotent and essentially meaningless.").

Second, the warnings that accompanied Bloom's statements were not "boilerplate," as Plaintiffs contend, because they identified the exact risk that ultimately led to the Divestiture Sale not being consummated—the inability to receive FTC approval. *See, e.g.*, April 13, 2017 10-K ("There can be no assurance that we will be able to satisfy these obligations or obtain the authorizations and approvals necessary to complete the proposed acquisition."); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 678 (6th Cir. 2003) (cautionary language sufficient where it "disclosed the exact risk that occurred."); *Zwick Partners, LP*, 2019 WL 1450546, at *8 (same).

Plaintiffs' reliance on *Helwig* to argue otherwise is misplaced, as the cautionary language here "offered investors [] guidance about the consequences" of the FTC's oversight, including that the FTC could impose conditions that would delay the acquisition, impose additional costs on the company, adversely affect the company's business or even "***result in the delay or abandonment of the proposed acquisition by [Fred's], Walgreens, or Rite Aid***." *Compare Helwig*, 251 F.3d at 559 (finding cautionary language not sufficient where it "offered investors no guidance about the consequences" of potential legislation on the company's business), *with* April 13, 2017 10-K.

### D.    Plaintiffs Have Failed to Plead That Bloom's Statements Were False When Made, So Plaintiffs' Complaint Should Be Dismissed In Its Entirety.

Unable to revive a pleading wholly bereft of the kinds of specific allegations required to state a Section 10(b) violation, Plaintiffs instead pivot, now claiming that the sufficiency of their pleading as to the falsity of Bloom's statements is a fact question for the jury. Opp. at 18. But while Plaintiffs' allegations need not be "incontrovertible," they must at least state with particularity factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* 15 U.S.C § 78u-4(b)(1), (b)(2). As Plaintiffs have failed to do so, they are not entitled to pursue this matter further. *See Dailey v. Medlock,* 551 F. App'x 841, 845 (6th Cir. 2014). Plaintiffs' claims can and should be dismissed.

Because Plaintiffs cannot overcome the deficiencies in their claim under Section 10(b), Plaintiffs' control person claims likewise fail. *See Dailey,* 551 F. App'x at 849.

### CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice as to Bloom.

Dated: February 18, 2020

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ

s/ Bradley E. Trammell
Bradley E. Trammell (TN 13980)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Tel: 901-577-2121
Fax: 901-577-2303
btrammell@bakerdonelson.com

AKIN GUMP STRAUSS HAUER & FELD LLP
M. Scott Barnard (pro hac vice)
Texas State Bar No. 24001690
Michelle Reed (pro hac vice)
Texas State Bar No. 24041758
Lauren E. York (pro hac vice pending)
Texas State Bar No. 24098647
Erin Brewer (pro hac vice)
Texas State Bar. No. 24106963
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Tel: (214) 969-2800
Fax: (214) 969-4343
sbarnard@akingump.com
mreed@akingump.com
lyork@akingump.com
erin.brewer@akingump.com

*Counsel for Defendants Fred's, Inc. and Michael
Bloom*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2020, I filed the foregoing document using the Court's CM/ECF filing system, which will automatically send e-mail notification of such filing to the following individual or counsel of record:

Paul Kent Bramlett, Esq.
BRAMLETT LAW OFFICES
P.O. Box 150734
Nashville, TN 37215
Telephone:  (615) 248-2828
Email:  pknashlaw@aol.com

Al Holifield, Esq.
Sarah R. Johnson, Esq.
HOLIFIELD JANICH & ASSOCIATES, PLLC
11907 Kingston Pike, Suite 201
Knoxville, TN 37934
Telephone:  (865) 566-0115
Email:  aholifield@hapc-law.com

Peretz Bronstein, Esq.
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

Patrick V. Dahlstrom, Esq.
Jared Matthew Schneider, Esq.
Joshua B. Silverman, Esq.
Jeremy Alan Lieberman
POMERANTZ LLP
10 South LaSalle, Suite 3505
Chicago, IL 60603
Telephone:  (312) 377-1181
Email: pdahlstrom@pomlaw.com
Email:  jschneider@pomlaw.com
Email:  jbsilverman@pomlaw.com

*Counsel for Plaintiffs*

Caroline Hickey Zalka, Esq.
Jonathan D. Polkes, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Email:  caroline.zalka@weil.com
Email:  jonathan.polkes@weil.com

Britt K. Latham, Esq.
Margaret V. Dodson, Esq.
BASS BERRY & SIMS PLC-NASHVILLE
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone:  (615) 742-7762
Email:  blatham@bassberry.com
Email:  margaret.dodson@bassberry.com

Michael P. Kapellas, Esq.
BASS BERRY & SIMS PLC-MEMPHIS
The Tower at Peabody Place
100 Peabody Place, Suite 1300
Memphis, TN 38103
Telephone:  (901) 543-5900
Email:  mkapellas@bassberry.com
*Counsel for Defendants*
*Walgreens Boots Alliance Inc., Stefano Pessina*
*and George R. Fairweather*


                                        *s/ Bradley E. Trammell*
                                        Bradley E. Trammell